IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 94 CR 172 |
| | ) | |
| BURUJI KASHAMU, et al., | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Buruji Kashamu's ("Kashamu") Motion to Quash Arrest and to Dismiss Indictment (the "Motion"). For the following reasons, the Court denies the Motion without prejudice. Kashamu is granted leave to refile the Motion when he submits himself to the jurisdiction of the Court.

## I. BACKGROUND[1]

In March 1994, Defendant Kary Hayes ("Hayes") arrived at O'Hare International Airport in Chicago, Illinois on a flight from Zurich, Switzerland carrying a suitcase containing approximately fourteen pounds of heroin. Authorities discovered the heroin and arrested Hayes. Hayes agreed to cooperate, and revealed that he was a member of a group of smugglers who were bringing heroin into the United States. United States v. Stebbins, 219 Fed. Appx. 569, 571 (7th Cir. March 22, 2007). Hayes disclosed the identity of several co-conspirators, who named others, ultimately bringing down the entire conspiracy. Id. The government eventually brought

---

[1] The Court takes certain undisputed Background facts from the government's Response to the Motion.

1

charges against fourteen Defendants, including the alleged kingpin, Kashamu, who resided in the Republic of Benin in western Africa. Id. Eleven Defendants pleaded guilty, and the only Defendant to go to trial, Peter Stebbins, was convicted after seven of his co-defendants testified against him. Id. With respect to certain identification issues, one or more of the female co-defendants testified that they had engaged in personal sexual relations with Kashamu. The Court sentenced these Defendants to prison terms of varying lengths. Federal Bureau of Prison records indicate that many of these Defendants have been released from custody after serving their sentences. Two Defendants remain at large in this case – one of these Defendants is Kashamu. Id.

This case is therefore presently in somewhat of an unusual posture: Kashamu, whom the government indicates may currently be in Nigeria, has filed the Motion approximately eleven years after his indictment,[2] and several years after many of the individuals he allegedly directed to smuggle heroin have completed their terms of incarceration. In order to more fully explain the factual and procedural context in which the Motion arises, the Court must briefly turn its attention to Kashamu's 1998 arrest in London, England and the extradition proceedings that followed that arrest.

At some point during its investigation into the Defendants' smuggling activities, the government learned that Kashamu occasionally traveled to London. The government therefore requested the issuance of a provisional arrest warrant in England. On December 18, 1998, British authorities arrested Kashamu when he arrived on an inbound flight to London. Kashamu

---

[2] The grand jury returned a Second Superceding Indictment against Kashamu and other Defendants on May 21, 1998.

was detained, and extradition proceedings were initiated. The British court, however, quashed the order of extradition, finding that the United States had failed to disclose that one of its cooperating witnesses, a Defendant in the instant case, had failed to identify Kashamu from an arrest photograph. Regina v. (1) The Governor of HMP Prison, Brixton, (2) The Government of the United States Ex Parte Buruji Kashamu, CO/2344/1999; CO/2141/2000 (High Court of Justice Oct. 6, 2000). It is not clear from the record whether any of the other co-defendants were involved in an identification hearing. Following this decision, British authorities released Kashamu.

When the United States repeated its request for Kashamu's extradition, British authorities arrested him again. After receiving evidence, including the testimony of Nigerian Drug Law Enforcement Agency officials regarding Kashamu's cooperation with that Agency in several investigations, the British court concluded that Kashamu's brother, a heroin dealer in Nigeria and Benin, was the individual sought by the United States. "I am satisfied that the defendant has a brother who bears a striking resemblance to him . . . I am satisfied that the defendant's brother was one of the co-conspirators in the drugs importation which involved Catherine and Ellen Wolters . . ."[3] Government of the United States of America v. Buriju Kashamu, at 9 (Street Magistrates' Court January 10, 2003). The British court therefore dismissed the extradition proceedings against Kashamu and released him. Id. at 10. Kashamu's current whereabouts are unknown to this Court, although, as the Court has previously noted, he may be located somewhere in Nigeria.

---

[3] Catherine and Ellen Wolters are Defendants in the instant case. Both have completed their sentences and have been released from custody.

3

Kashamu, through counsel, filed the Motion on February 3, 2009. Kashamu asserts that the British Court's finding that he is not the individual the United States seeks should bar the United States from any further prosecution of him in this matter under the principles of res judicata and collateral estoppel. In its initial Response, the government asserted that the Court should deny the Motion on its merits. However, in a later submission, the government changed course and argued that since Kashamu is a fugitive from justice, the Court should decline to reach the merits of his Motion. The Motion is fully briefed and before the Court.

## II. DISCUSSION

In Molinaro v. New Jersey, the Supreme Court refused to adjudicate a criminal case in which the defendant/appellant had refused to surrender to state authorities after his conviction. 396 U.S. 365 (1970).

> No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for a determination of his claims.

Id. at 366 (citing Smith v. United States, 94 U.S. 97 (1876) and Bonahan v. Nebraska, 125 U.S. 692 (1887) (both ordering the removal of the case from the Court's docket after receiving information that the appellant had escaped from custody)). The principle articulated by the Molinaro Court – that those who have fled from the judicial process may not benefit from it – is known as the "doctrine of fugitive disentitlement." E.g., United States v. Eagleson, 874 F. Supp. 27, 29 (D. Mass. 1994).

The fugitive disentitlement doctrine is based on a notion of mutuality. Degen v. United States, 517 U.S. 820, 824 (1996); Smith, 94 U.S. at 97 ("It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party . . . is where he can be made to respond to any judgment we might enter."); Eagleson, 874 F. Supp. at 29. Courts are reluctant to afford fugitive defendants the benefits of a potential legal victory when these defendants face no adverse consequences from unfavorable rulings. United States v. Oliveri, 190 F. Supp. 2d 933, 935 (S.D. Tex. 2001) ("the fugitive disentitlement doctrine has come to signify the unwillingness of courts to waste time and resources exercising jurisdiction over litigants who will only comply with favorable rulings of the court."); United States v. Stanzione, 391 F. Supp. 1201, 1201 (S.D.N.Y 1975) ("until [defendant] is willing to submit his case for complete adjudication – win or lose – he should not be permitted to call upon the resources of the court for the determination of selective claims."); Dawkins v. Mitchell, 437 F.2d 646, 648 (D.C. Cir. 1970).

Seventh Circuit case law recognizes that the fugitive disentitlement doctrine is a "discretionary device" courts may apply to criminal appeals or civil actions by or against fugitives. Gutierrez-Almazan v. Gonzales, 453 F.3d 956, 956 (7th Cir. 2006). While the Seventh Circuit has not expressly indicated whether the fugitive disentitlement doctrine applies to pretrial motions in criminal cases, other Courts have utilized the doctrine in that context. Oliveri, 190 F. Supp. 2d at 936 ("Although the fugitive disentitlement doctrine is often invoked during the appellate process, it also applies to pretrial motions made by fugitives in the district courts.") (citing Eagleson, 874 F. Supp. at 29-31); Stanzione, 391 F. Supp. at 1201 (denying the fugitive defendant's motion to dismiss indictment); United States v. Hijazi, No. 05-40024, 2008 U.S. Dist. LEXIS 79843, at *7-8 (C.D. Ill. Sept. 4, 2008) (holding defendant resident of Kuwait's

motion to dismiss indictment in abeyance until defendant appears for arraignment). In their reasoning, these Courts have emphasized the principle of mutuality. Stanzione, 391 F. Supp. at 1201 ("[I]f the motion to dismiss were to be denied on the merits, defendant would remain a fugitive from justice, making it impossible to bring this case to a final resolution."); Hijazi, 2008 U.S. Dist. LEXIS 79843, at *8 ("Hijazi seeks the benefit of a ruling from this Court without the risk that, if the ruling is not in his favor, he appear and be arraigned."). In addition, the Oliveri Court indicated that it did not want to encourage the flight of other fugitives by entertaining the defendant's motion to dismiss the indictment. Oliveri, 190 F. Supp. 2d at 936. This Court finds the reasoning of the Oliveri, Stanzione, and Hijazi Courts persuasive, and therefore determines that the fugitive disentitlement doctrine can apply to pretrial motions in criminal cases, subject to the discretion of the Court. See Gutierrez-Almazan, 453 F.3d at 956 (indicating that fugitive disentitlement is a "discretionary device.").

In order to make a specific determination as to whether the fugitive disentitlement doctrine should apply to the Motion, the Court must inquire into whether (1) Kashamu is a fugitive in the eyes of the law, and (2) any exceptions to the doctrine exist in this case. Oliveri, 190 F. Supp. 2d at 936.

Courts define the term "fugitive" as someone who seeks to evade prosecution by either actively avoiding the authorities, or remaining in a geographic location that is out of the authorities' reach.

> The intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending. This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of the charges while legally outside the jurisdiction, "constructively flees" by deciding not to return.

6

United States v. Catino, 735 F.2d 718, 722 (2d Cir. 1984); Oliveri, 190 F. Supp. 2d at 936; Eagleson, 874 F. Supp. at 29. Since Kashamu has retained a Chicago law firm to represent him in this matter, and the only information the Court has regarding his whereabouts indicates that he may be somewhere in Nigeria, the Court can safely infer that Kashamu is aware of the charges against him, and "is purposefully absenting himself from the United States to avoid arrest and arraignment on the charges." Oliveri, 190 F. Supp. 2d at 936. The Court therefore considers Kashamu a fugitive.

In Oliveri, the Court indicated that where "special circumstance[s]" or "overriding policy concern[s]" exist, the fugitive disentitlement doctrine may not apply. Id. The Oliveri Court did not provide specific examples of such "special circumstance[s]" or "overriding policy concern[s]," but a notable case from the Southern District of Florida is instructive. In United States v. Noriega, the United States indicted the *de facto* head of the Panamanian government, General Manuel Noriega ("Noriega") on drug trafficking and other related charges. 683 F. Supp. 1373 (S.D. Fl. 1988). The indictment alleged that Noriega was part of an international conspiracy to import cocaine into the United States. Id. at 1373. The Florida Court declined to apply the fugitive disentitlement doctrine and allowed Noriega, through counsel, to file various pretrial motions. Id. at 1374-75. In so doing, the Court cited Noriega's "unique status" as the leader of a sovereign state and the significant "political overtones" of the case. Id. at 1374-75.[4] No such circumstances exist in the instant case.

---

[4] In 1989, the United States invaded Panama and removed Noriega from power after a disputed election and subsequent civil unrest. United States v. Noriega, 117 F.3d 1206, 1209-10 (11th Cir. 1997). Noriega was brought to the United States, where he was convicted following a jury trial. Id. He has completed his sentence, but remains in custody in the United States pending extradition to France on charges of money laundering.
http://www.expatica.com/fr/news/french-news/Noriega-asks-Sarkozy-for-pardon-to-avoid-extradition_56491.html#.

Having found that (1) Kashamu is a fugitive and (2) no exceptions to the fugitive disentitlement doctrine exist in this case, the Court therefore denies the Motion. See Molinaro, 396 U.S. at 366; Catino, 735 F.2d at 722; Oliveri, 190 F. Supp. 2d at 936. Kashamu will not be permitted to litigate the merits of the Motion until he appears before the Court. Even now, eleven years after the return of the indictment, the door to the federal courtroom remains open to Kashamu.

### III. CONCLUSION

For the foregoing reasons, Kashamu's Motion to Quash Arrest and to Dismiss Indictment is denied without prejudice. Kashamu is granted leave to refile the Motion when he submits himself to the jurisdiction of the Court.

IT IS SO ORDERED.

ENTER: *[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: September 25, 2009