IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 94 CR 172 |
| v. | ) | |
| | ) | |
| BURUJI KASHAMU, et al., | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Buruji Kashamu's ("Kashamu") Motion to Reconsider Denial of Motion to Quash Arrest Warrant and to Dismiss Indictment on Merits (the "Motion to Reconsider"). Kashamu moves the Court to (1) reconsider its September 25, 2009 Opinion and Order in which it denied Kashamu's Motion to Quash Arrest Warrant and to Dismiss Indictment (the "Motion to Dismiss") on the basis of the fugitive disentitlement doctrine, and (2) rule on the merits of his underlying Motion to Dismiss. For the following reasons, the Court grants Kashamu's Motion to Reconsider, but his underlying Motion to Dismiss remains denied.

## I. BACKGROUND

In March 1994, Defendant Kary Hayes ("Hayes") arrived at O'Hare International Airport in Chicago, Illinois on a flight from Zurich, Switzerland carrying a suitcase containing approximately fourteen pounds of heroin. Authorities discovered the heroin and arrested Hayes. Hayes agreed to cooperate, and revealed that he was a member of a group of smugglers who were bringing heroin into the United States. United States v. Stebbins, 219 Fed. Appx. 569, 571 (7th Cir. March 22, 2007). Hayes disclosed the identity of several co-conspirators, who named

1

others, ultimately bringing down the entire conspiracy. Id. The government eventually brought charges against fourteen Defendants, including the alleged kingpin, Kashamu, who resided in the Republic of Benin in western Africa. Id. Eleven Defendants pleaded guilty, and the only Defendant to go to trial, Peter Stebbins, was convicted after seven of his co-defendants testified against him. Id. With respect to certain identification issues, one or more of the female co-defendants testified that they had engaged in personal sexual relations with Kashamu. The Court sentenced these Defendants to prison terms of varying lengths. Federal Bureau of Prison records indicate that many of these Defendants have been released from custody after serving their sentences. Two Defendants remain at large in this case – one of these Defendants is Kashamu. Id.

Kashamu, whom the government indicates may currently reside in Nigeria, filed the underlying Motion to Dismiss by means of counsel approximately eleven years after his indictment,[1] and several years after many of the individuals he allegedly directed to smuggle heroin have completed their terms of incarceration. In order to more fully explain the factual and procedural context in which the Motion to Dismiss and the instant Motion to Reconsider arise, the Court must briefly turn its attention to Kashamu's 1998 arrest in London, England and the extradition proceedings that followed that arrest.

At some point during its investigation into the Defendants' smuggling activities, the government learned that Kashamu occasionally traveled to London. The government therefore requested the issuance of a provisional arrest warrant in England. On December 18, 1998,

---

[1] The grand jury returned a Second Superceding Indictment against Kashamu and other Defendants on May 21, 1998.

2

British authorities arrested Kashamu when he arrived on an inbound flight to London. Kashamu was detained, and extradition proceedings were initiated. The British court, however, quashed the order of extradition, finding that the United States had failed to disclose that one of its cooperating witnesses, a Defendant in the instant case, had failed to identify Kashamu from an arrest photograph. <u>Regina v. (1) The Governor of HMP Prison, Brixton, (2) The Government of the United States Ex Parte Buruji Kashamu</u>, CO/2344/1999; CO/2141/2000 (High Court of Justice Oct. 6, 2000). It is not clear from the record whether any of the other co-defendants were involved in an identification hearing. Following this decision, British authorities released Kashamu.

When the United States repeated its request for Kashamu's extradition, British authorities arrested him again. After receiving evidence, including the testimony of Nigerian Drug Law Enforcement Agency officials regarding Kashamu's cooperation with that Agency in several investigations, the British court concluded that Kashamu's brother, a heroin dealer in Nigeria and Benin, was the individual sought by the United States. "I am satisfied that the defendant has a brother who bears a striking resemblance to him . . . I am satisfied that the defendant's brother was one of the co-conspirators in the drugs importation which involved Catherine and Ellen Wolters . . ."[2] <u>Government of the United States of America v. Buriju Kashamu</u>, at 9 (Street Magistrates' Court January 10, 2003). The British court therefore dismissed the extradition proceedings against Kashamu and released him. <u>Id.</u> at 10. Kashamu's current whereabouts are

---

[2] Catherine and Ellen Wolters are Defendants in the instant case. Both have completed their sentences and have been released from custody.

3

unknown to this Court, although, as the Court has previously noted, he may be located somewhere in Nigeria.

Kashamu, through counsel, filed his Motion to Dismiss on February 3, 2009. Kashamu asserted that the British Court's finding that he is not the individual the United States seeks should bar the United States from any further prosecution of him in this matter under the principles of res judicata and collateral estoppel. In its initial Response, the government asserted that the Court should deny the Motion to Dismiss on its merits. However, in a later submission, the government changed course and argued that since Kashamu was a fugitive from justice, the Court should decline to reach the merits of his Motion to Dismiss. The Court agreed with the government's later submission, and on September 25, 2009 denied the Motion to Dismiss without prejudice on the basis of the fugitive disentitlement doctrine. United States v. Kashamu, 656 F. Supp. 2d 863 (N.D. Ill. 2009). In that Opinion and Order, the Court cited case law providing that individuals who seek to evade prosecution by either actively avoiding the authorities, or, like Kashamu, remaining in a geographic location out of the authorities' reach, may not seek favorable rulings from a Court in the jurisdiction they are avoiding. Id. at 867.

## II. KASHAMU'S MOTION TO RECONSIDER

Kashamu filed, by means of counsel, the instant Motion to Reconsider on November 10, 2009. The Motion to Reconsider became fully briefed on January 18, 2010. Kashamu and the government agree that in light of the Seventh Circuit's decision in In re: Hijazi, 589 F.3d 401 (7th Cir. 2009), which was issued after this Court's September 25, 2009 decision, this Court should address the merits of Kashamu's Motion to Dismiss. For the following reasons, the Court agrees.

4

In Hijazi, Petitioner Ali Hijazi was indicted in the Central District of Illinois for fraud. Id. at 403. Hijazi is a citizen of Lebanon and a resident of Kuwait, and has never appeared in Illinois. Id. There is no extradition treaty between the United States and Kuwait, and the Kuwaiti government indicated that it would not turn over Hijazi to the United States, even though Hijazi had voluntarily surrendered to Kuwaiti authorities. Id. at 403, 412. Through counsel in the United States, Hijazi moved the Central District Court to dismiss his indictment. Id. at 403. The government asserted that the Court should hold the motion in abeyance until Hijazi appeared before the Court and was arraigned. United States v. Hijazi, No. 05-40024, 2008 U.S. Dist. LEXIS 79843 (N.D. Ill. Sept. 4, 2008). The Central District Court, citing the doctrine of fugitive disentitlement, agreed with the government and held the motion in abeyance. Id. at *8-9 ("[A] principle justification of the fugitive disentitlement doctrine is mutuality in litigation. That justification applies here: Hijazi seeks the benefit of a ruling from this Court without the risk that, if the ruling is not in his favor, he appear and be arraigned.").

However, the Seventh Circuit determined that the fugitive disentitlement doctrine did not apply to Hijazi, because (with the exception of one brief visit in 1993) Hijazi had never been in the United States and thus could not have fled its jurisdiction. Hijazi, 589 F.3d at 412. Moreover, the Seventh Circuit noted that Hijazi faced significant negative consequences should his motion to dismiss be denied: he would be subject to arrest by INTERPOL if he ever left Kuwait, and the government of Kuwait could change its mind about cooperating with the United States. Id. at 413. In such a situation, the Seventh Circuit found, "disentitlement is 'too blunt an instrument' to redress the indignity of a defendant's absence." Id. at 414 (quoting Degen v. United States, 517 U.S. 820, 828 (1996)). The Seventh Circuit therefore granted Hijazi's

5

Petition for Mandamus and ordered the Central District Court to rule on Hijazi's Motion to Dismiss. Id.

This Court acknowledges that Kashamu's situation does not dovetail perfectly with Hijazi's. Nigeria, where the government asserts Kashamu may currently reside, has an extradition treaty with the United States, and there is no indication that Kashamu has surrendered to Nigerian authorities.[3] There is, however, one key similarity between these cases that convinces this Court that it should grant Kashamu's Motion to Reconsider. In Hijazi, the Petitioner had not fled the United States. Id. at 412. The Seventh Circuit reasoned that the fugitive disentitlement doctrine therefore did not apply to Hijazi. Id. In the instant case, there is also no indication that Kashamu has fled the United States. The Second Superceding Indictment and the government's Response to Kashmu's Motion to Dismiss indicate that Kashmu directed the smuggling operation from his residence in Benin, and there is no suggestion by any party that Kashamu has been in the United States since the government brought charges against him. Under the Seventh Circuit's reasoning in Hijazi, the fugitive disentitlement doctrine does not apply to Kashamu. Id. at 412-14.

Kashamu's Motion to Reconsider is therefore granted. The Court will address his Motion to Dismiss on its merits.

### III. KASHAMU'S MOTION TO QUASH ARREST WARRANT AND TO DISMISS INDICTMENT

Kashamu asserts that the government's unsuccessful attempts to extradite him from the United Kingdom preclude the government from continuing its current efforts to prosecute him.

---

[3] Kashamu asserts, however, that he has cooperated with a Nigerian drug enforcement agency during investigations into drug-smuggling activities in that country.

Specifically, Kashamu argues that the British Court's finding that he is not the individual who directed the heroin smuggling ring should bar any further prosecution of him for crimes related to that smuggling operation. In making this argument, Kashamu relies on the principles of res judicata and collateral estoppel.

Claims under res judicata and collateral estoppel are generally brought in civil litigation. In criminal cases, these sort of claims fall squarely under the rubric of double jeopardy. United States v. Dunkel, No. 96-3478, U.S. App. LEXIS 16409, at *9 n.5 (7th Cir. July 1, 1997) ("Double jeopardy is the criminal counterpart to res judicata, and incorporates the concept of collateral estoppel."); see also Kennedy v. Washington, 986 F.2d 1129, 1133 (7th Cir. 1993) ("[C]ollateral estoppel is a part of the constitutional protection against double jeopardy . . . double jeopardy is the criminal counterpart of the civil doctrine of res judicata, of which the principle of collateral estoppel is a part.") (citing Ashe v. Swenson, 397 U.S. 436 (1970) and Dowling v. United States, 493 U.S. 342 (1990)). The Court will therefore consider Kashamu's claims as being brought pursuant to the Double Jeopardy Clause of the Fifth Amendment.

The Double Jeopardy Clause provides: "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST., amend. V. "The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." United States v. Doyle, 121 F.3d 1078, 1083 (7th Cir. 1997) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). The first two of these protections are intended to bar the government from pursuing serial prosecutions of the same individual for the same offense. McCloud v. Deppisch, 409 F.3d 869, 873 (7th Cir. 2005). The third protection ensures that a

defendant's "total punishment [does] not exceed that authorized by legislature." Id. (quoting Jones v. Thomas, 491 U.S. 376, 381 (1989)). In this case, none of the Double Jeopardy Clause's protections apply to Kashamu. He has not been convicted, acquitted, or punished for his role as the alleged kingpin of the smuggling ring. In fact, he has not yet been prosecuted, as the government's extradition attempts to date have not been successful, and the government admits that it is currently unsure of Kashamu's whereabouts. Kashamu's claims therefore fail.

The Court notes that even if it were to consider Kashamu's assertions on the standards articulated in civil cases for res judicata and collateral estoppel, it would still deny his Motion to Dismiss. Both res judicata and collateral estoppel require a final judgment on the merits in an earlier action in order for that earlier action to have preclusive effect. H-D Michigan, Inc. v. Top Quality Serv., 496 F.3d 755, 760 (7th Cir. 2007); Tartt v. Northwest Community Hosp., 453 F.3d 817, 822 (7th Cir. 2006). In this case, the decisions by the British Courts not to extradite Kashamu cannot be considered adjudications on the merits of his criminal case in the Northern District of Illinois. See DeSilva v. DiLeonardi, 181 F.3d 865, 868 (7th Cir. 1999) ("Extradition is handled under the civil rules. No jury will sit, no elements of the offense will be adjudicated in a speedy and public trial, the accused will not be confronted by the witnesses against them, jeopardy does not attach (meaning that successive efforts to extradite a person do not constitute double jeopardy), and so on."); Hooker v. Klein, 573 F.2d 1360, 1367 (9th Cir. 1978) ("Because the extraditing court does not render judgment on the guilt or innocence of the fugitive, it cannot be said that an order of extraditability constitutes a final judgment for the purposes of res judicata."). The British Court likewise recognized the limited nature of extradition proceedings. "Extradition proceedings do not, nor does fairness require that they should, involve resolution of

trial issues. Self-evidently, extradition contemplates trial in another jurisdiction according to the law there." The Queen on the Application of Buruji Kashamu v. (1) The Governor of HMP Brixton, (2) The Government of the United States of America, CO/4628/2001 (High Court of Justice, Nov. 23, 2001). Kashamu's claims therefore also fail when considered under the civil standards for res judicata and collateral estoppel.

Kashamu thus cannot prevail on his Motion to Dismiss under either the Double Jeopardy standard or the civil standards for res judicata or collateral estoppel. The Court therefore determines that his Motion to Dismiss will remain denied.

## IV. CONCLUSION

For the foregoing reasons, Kashamu's Motion to Reconsider is granted, and his Motion to Dismiss Indictment remains denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

Dated: July 15, 2010