IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 94 CR 172-15 |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| BURUJI KASHAMU ) | |

**OPINION AND ORDER**

Before the Court is Defendant Buruji Kashamu's ("Kashamu") second motion to dismiss his indictment pursuant to Federal Rules of Criminal Procedure 12(b) and 48(b) based on alleged violations of the Fifth Amendment Due Process Clause and the Sixth Amendment right to a speedy trial. For the following reasons, the motion is denied.

**I. BACKGROUND**

Kashamu is a dual citizen of Nigeria and Benin, currently living in Nigeria. He is not now, nor has he ever been a citizen of the United States. On May 21, 1998, a federal grand jury charged Kashamu and fourteen other co-defendants in a Second Superseding Indictment (the "indictment") for their alleged involvement in an international drug conspiracy to smuggle heroin into the United States. The indictment charges Kashamu by name, and by what the Government believes to be his two aliases: "Alaji" and "Kasmal." Since then, twelve co-defendants have pleaded guilty, one went to trial and was found guilty, and two—including Kashamu—remain fugitives. Nine of the co-defendants pleaded guilty within eight months of being charged in the indictment. According to these defendants, Kashamu, who they knew as "Alaji," was the person in charge of the entire organization. Some of them had visited with Kashamu in Benin, and one, Defendant Ellen Fuhrman Wolters, had an intimate relationship with Kashamu at the time of the conspiracy.

While the case proceeded against the other co-defendants, the whereabouts of Kashamu remained unknown. On December 18, 1998, however, Kashamu was found in England and was

arrested on a provisional warrant at the request of the Government. Kashamu was detained in England where he participated in extradition proceedings. During this time, Kashamu argued that it was not he, but rather his brother, Adewale Kashamu ("Adewale"), who was involved in drug trafficking activity. His first committal order was quashed in October of 2000, but he was immediately re-arrested and charged in a second extradition proceeding. The second extradition proceeding was likewise unsuccessful and Kashamu was released on January 10, 2003. Kashamu then returned to Nigeria where he now lives and works in numerous business ventures, including cement and petroleum importation, commercial real estate, and hospitality. Kashamu "also became an active participant in Nigerian politics" and works as a "key facilitator of Nigeria's current President Goodluck Jonathan's initiative to reform the Nigerian government." Kashamu's Mem. of L. in Supp. of Mot. to Dismiss the Indictment 4. To date, Kashamu has not appeared before this Court for an initial appearance or arraignment on the existing 1998 indictment.

In February of 2009, Kashamu, through local counsel, filed a motion to quash the arrest warrant and to dismiss the indictment against him "on the ground that the English magistrate had found that he was not 'Alaji' and the finding should be given collateral estoppel effect in the criminal proceeding and that if this was done he could not be convicted and therefore shouldn't have to stand trial." United States v. Kashamu, 656 F.3d 679, 681 (7th Cir. 2011). The Court denied the motion, and in 2011, the Seventh Circuit affirmed. Id. at 688. The United States Supreme Court denied certiorari on January 9, 2012. Kashamu v. United States, 132 S. Ct. 1046 (2012).

Now, over two years later, Kashamu has filed the instant motion to dismiss, arguing that his Sixth Amendment right to a speedy trial has been violated, and that the Government is violating his Fifth Amendment right to due process because it lacks personal jurisdiction over him. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." United States v. Moore, 563 F.3d 583, 586 (7th Cir. 2009) (quoting United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006)). Rather, it is a means to allege a defect in the indictment or in instituting prosecution. Fed. R. Crim. P. 12(b)(3). A Rule 12(b)(3) "motion alleging a defect in instituting the prosecution" or "a motion alleging a defect in the indictment" must be raised before trial. Id.; see also In re Hijazi, 589 F.3d 401, 408 (7th Cir. 2009).

Additionally, under Rule 48, [t]he Court may dismiss an indictment . . . if unnecessary delay occurs in bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3). "'In general dismissal under Rule 48(b) is appropriate only where there is delay that is purposeful or oppressive.'" United States v. Ward, 211 F.3d 356, 362 (7th Cir. 2000) (quoting United States v. Sears, Roebuck & Co., Inc., 877 F.2d 734, 739 (9th Cir. 1989)). "Rule 48 is a codification of the inherent power of a court to dismiss a case for want of prosecution." United States v. Deleon, 710 F.2d 1218, 1223 (7th Cir. 1983). "However, Rule 48(b) 'clearly is limited to post-arrest situations.'" Id. (quoting United States v. Marion, 404 U.S. 307, 319 (1971)).

### B. Constitutional Protections

As an initial matter, the Government argues that Kashamu is not entitled to the constitutional protections which he seeks. Specifically, the Government argues that the Fifth and Sixth Amendments are inapplicable to a foreign national living abroad who is not in the United States and has never appeared before this Court on the indictment against him. See United States v. Koch, No. 03-144, 2011 WL 284485, at *3 (W.D. Pa. Jan. 25, 2011) ("Numerous courts have held that a foreign national may raise his or her Sixth Amendment right to a speedy trial and, if successful, is

3

entitled to have the indictment dismissed. However, with one exception, the Court has been unable to find any reported cases in which the court found that the Sixth Amendment right to a speedy trial attached *before* the defendant was in the United States." (internal citations omitted)). Indeed, in Johnson v. Eisentrager, 339 U.S. 763 (1950), the Supreme Court "rejected the extension on the Fifth and Sixth Amendments to aliens beyond the borders of the United States." United States v. Wanigasinghe, 545 F.3d 595, 597 (7th Cir. 2008). In addition, in United States v. Verdugo-Urquidez, the Supreme Court found that the Fourth Amendment protection against unlawful searches and seizures was inapplicable to a defendant who was "a citizen and resident of Mexico with no voluntary attachment to the United States, and the place searched was located in Mexico." 494 U.S. 259, 274-275 (1990). While Kashamu could raise these arguments if he was present in the United States, his continued presence in Nigeria certainly weakens his claim to Fifth and Sixth Amendment rights. The Seventh Circuit, however, cautions against "broad pronouncements" with respect to "the Constitution's extraterritorial application." Wanigasinghe, 545 F.3d at 597. Therefore, in an exercise of that prescribed caution, the Court addresses Kashamu's constitutional arguments in support of the dismissal of his indictment.

**C. Speedy Trial**

Kashamu appears to allege a defect in instituting the prosecution of his case pursuant to Rule 12(b)(3) insofar as he argues that his right to a speedy trial has been violated. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI. "The constitutional right to a speedy trial is triggered when an indictment is returned against a defendant." United States v. Hills, 618 F.3d 619, 629 (7th Cir. 2010). "If a defendant's right to a speedy trial has been violated, the indictment must be dismissed." United States v. Battis, 589 F.3d 673, 678 (3d Cir. 2009) (Barker v. Wingo, 407 U.S. 514, 522 (1972)).

4

The Supreme Court has established a four-factor balancing test to evaluate a speedy trial claim: (1) "whether delay before trial was uncommonly long" (2) "whether the government or the criminal defendant is more to blame for that delay" (3) "whether, in due course, the defendant asserted his right to a speedy trial" and (4) "whether he suffered prejudice as the delay's result." Doggett v. United States, 505 U.S. 647, 651 (1992). "None of these factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'" Battis, 589 F.3d at 678 (quoting Barker, 407 U.S. at 533); see also Vermont v. Brillon, 556 U.S. 81, 93 (2009) ("The factors identified in *Barker* have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." (internal quotation marks and citation omitted)).

*1. Length of Delay*

"The first factor . . . is a threshold requirement: without a delay that is presumptively prejudicial, we need not examine the other factors." United States v. Harmon, 721 F.3d 877, 882 (7th Cir. 2013) (internal quotation marks and citations omitted). "Delay approaching one year is presumptively prejudicial." Id. "If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett, 505 U.S. at 652. "This latter inquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time." Id.

The Government argues that because Kashamu has never appeared and has not yet been brought to trial, the period of delay between his indictment and trial remains open and thus, "[t]he mere quantification of years passed since indictment, then, is not helpful, and the multitude of cases Kashamu cites for the sole purpose of setting forth various time frames serve no purpose here." Gov't Resp. to Def. Kashamu's Mot. to Dismiss the Indictment 5. The Court disagrees. For

purposes of calculating delay, it is undisputed that more than fifteen years have elapsed since the grand jury returned Kashamu's indictment. "This extraordinary delay stretches well beyond the minimum needed to trigger a further speedy trial analysis." United States v. Arceo, 535 F.3d 679, 684 (7th Cir. 2008) (finding a delay of six and one-half years extraordinary and prejudicial). Thus, the delay of fifteen years (and counting) weighs in favor of Kashamu as to the first factor.

## 2. *Blame for Delay*

Next, the Court must determine which party, if any, is more to blame for the delay. Under this factor, different weights are assigned for different reasons. For example,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531. In addition, "[j]ust as a State's 'deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the [State]' . . . so too should a defendant's deliberate attempt to disrupt proceedings be weighted heavily against the defendant." Vermont, 556 U.S. at 93-94 (quoting Barker, 407 U.S. at 531).

Kashamu argues that the responsibility for delay lies solely with the Government because, although he has lived openly and publically in Nigeria for the last eleven years,[1] the Government has not even attempted to seek his extradition pursuant to the relevant treaty. Indeed, it is well established that "[a] defendant has no duty to bring himself to trial; the State has that duty." Barker, 407 U.S. at 527. "[T]he Government, under the Sixth Amendment, has a 'constitutional duty to make a diligent good faith effort' to locate and apprehend a defendant and bring that defendant to

---

[1] During the eleven years since he returned to Nigeria following the extradition proceedings in England, Kashamu has "openly incorporated more than six businesses in his name . . . and his name has been frequently mentioned in the media as these businesses have grown." Kashamu's Mem. of L. in Supp. of Mot. to Dismiss the Indictment 10. In addition, Kashamu's political involvement has garnered him media attention over the years.

6

trial." Deleon, 710 F.2d at 1221 (quoting Smith v. Hooey, 393 U.S. 374, 383 (1969)). "Unless there is a showing that an effort to have the defendant returned to this country for trial would be futile, the government must make such an effort." United States v. McConahy, 505 F.2d 770, 773 (7th Cir. 1974).

The Government argues that such an effort, until recently,[2] would have been futile and that Kashamu is to blame for the delay because of "the damage he created to the government's ability to extradite him from Nigeria." Gov't Resp. to Def. Kashamu's Mot. to Dismiss the Indictment 5. In support of these arguments, the Government points to conflicting information provided by various high ranking Nigerian government officials and agencies during Kashamu's extradition proceedings in London, England, which it argues led to his release.

During the extradition proceedings, Kashamu claimed that he was a cooperator with Nigeria's National Drug Law Enforcement Agency ("NDLEA"), and that his brother, Adewale, was the drug trafficker wanted by the United States. Shortly thereafter, the Government sent inquiries regarding these allegations to the NDLEA. In response, the Government received letters and affidavits from the leadership of the NDLEA. One such letter, dated March 12, 2001, states, *inter alia*, that Kashamu "had, at no time, been an informant of this Agency nor has the Agency had cause to reward him for anything" and that it believed that his brother, Adewale, was dead "by the time Buruji Kashamu was wanted by this Agency in 1994." Gov't Resp. to Def. Kashamu's Mot. to Quash Warrant & to Dismiss Indictment Ex. 8, pt. 1, at p. 14 (Doc. No. 550-4). This information was provided to the magistrate judge during the extradition proceedings. Kashamu, however, countered this letter with one of his own, also purportedly from the NDLEA and dated January 24, 2000, which states that "[Kashamu] has been very helpful to us in the area of fighting crime and we

---

[2] The Government notes that the situation in Nigeria, and the attendant prospect for extradition of Kashamu have very recently improved as factions of the Nigerian government continue efforts to extradite Kashamu to the United States.

7

are surprised that he is being incarcerated on wrong accusations of drug trafficking in the UK." Id. at 18. When the Government inquired about this inconsistent letter with the NDLEA, it was informed that the letter is "bogus" and that "the contents are absolutely false." Id. at 23. This pattern of conflicting evidence and witness testimony continued throughout the extradition proceeding. Ultimately, the magistrate relied upon Kashamu's evidence and released him.

Based on the history of those proceedings, the Government argues that:

> Kashamu's actions in the London extradition proceeding created a paper and testimonial trail that his brother, and not himself, was the defendant charged in the instant case. Kashamu's ability to manipulate Nigerian officials, or at least his ability to create forged documents, was also apparent from the proceedings. This maneuvering, and the wall of protection Kashamu built around himself, made it clear that efforts to extradite Kashamu from Nigeria would be futile.

Gov't Resp. to Def. Kashamu's Mot. to Dismiss the Indictment at 9. In response, Kashamu argues that his alleged manipulation of Nigerian officials and forgery are not established facts, but merely the Government's view of the evidence. Ultimately, however, this dispute is irrelevant to the disposition of the case. The relevant fact is that conflicting evidence and testimony from high ranking Nigerian government officials was produced during the extradition proceedings.

Nevertheless, Kashamu argues that the Government fails to show that any attempt to extradite him from Nigeria would have been denied, as opposed to merely could have been denied. Kashamu relies on United States v. Pomeroy, where the court found that simply because Canadian officials could have denied extradition under the discretion afforded to them under the treaty, there was "nothing in the record to indicate they would have done so had a proper request been made by the Government." 822 F.2d 718, 721-722 (8th Cir. 1987). Here, however, there is evidence in the record that suggests that a request to the Nigerian government would have been denied. Indeed, it was testimony and evidence produced by the Nigerian government which led to Kashamu's release in England. Furthermore, Kashamu's status as a political figure in Nigeria and his relationship with Nigeria's President Goodluck Jonathan likewise suggest that an extradition attempt would have

been futile. See United States v. Woods, 851 F. Supp. 1564, 1568 (S.D. Fla. 1994) (attributing no delay to the Government for failing to seek extradition where the defendant was an official of the Bahamian government). Accordingly, the Court finds that the Government was not negligent in failing to pursue extradition against Kashamu in Nigeria. Because Kashamu fails to show that the Government intentionally or negligently failed to bring him to trial, the delay is not attributable to the Government.

Rather, as the Government argues, the delay is attributable to Kashamu because he not only resisted extradition in England, but he also created the circumstances which have prevented the United States from seeking his extradition from Nigeria. It is true that "'[a] defendant's claim that the government violated [his] right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay.'" United States v. Mitchell, 957 F.3d 465, 469 (7th Cir. 1992) (quoting United States v. Blanco, 861 F.2d 773, 778 (2d Cir. 1988)) (attributing delay to the defendant who initially fled from the United States to Columbia).

> Where it is apparent . . . that the defendant does not want a speedy trial (or any trial, for that matter) in this country, and resists the government's efforts to hold such a trial, the delay caused by that resistance is properly attributed to the defendant. . . . [I]t does not matter whether that resistance takes the form of deceitful attempts to avoid detection, or simply vigorous litigation of extradition proceedings; the goal of both forms of resistance is the same, to avoid being tried in the United States.

United States v. Reumayr, 530 F. Supp. 2d 1200, 1207 (D.N.M. 2007). So too here. Kashamu actively resisted extradition in England, and has continued that resistance in Nigeria—not the least of which includes his previous attempt to have this indictment dismissed in 2009. Thus, because the delay is attributable to Kashamu, this factor, "[t]he flag all litigants seek to capture," is weighted against him. United States v. Loud Hawk, 474 U.S. 302, 315 (1986).

### 3. *Timeliness of Kashamu's Assertion of his Speedy Trial Right*

Kashamu also argues that the third factor weighs in his favor because he has timely asserted his right to a speedy trial by raising the issue prior to the commencement of trial. Kashamu is

9

correct that his assertion is timely in the sense that it is not too late. However, in order to give this factor much weight, if any, in Kashamu's favor, the appropriate question is not whether he raised his objection "on time," but rather, whether he raised it quickly and promptly. See Deleon, 710 F.2d at 1222 (stating that "[t]he third factor is the nature of the defendant's assertion of his right to a speedy trial" and because the defendant did not assert his right until "after the alleged period of improper delay" it did "not weigh heavily, if at all, in his favor"). The answer to that question is no. At the latest, Kashamu became aware of this indictment on December 18, 1998, when he was arrested in England on the outstanding warrant. Notwithstanding that knowledge, Kashamu waited more than fifteen years to file the instant motion raising his right to a speedy trial. Kashamu's previous motion seeking dismissal of this indictment filed in 2009, notably, did not contain an assertion of his speedy trial right. This is not to say, however, that a speedy trial objection ten years after he knew of the indictment would have been considered timely. Rather, it further demonstrates the degree to which his current objection is untimely. Indeed, Kashamu's fifteen year delay in asserting this right weighs against him. See Doggett, 505 U.S. at 653 (stating that, if the defendant had known about his indictment years before he was arrested, then "*Barker's* third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him"); see also United States v. White, 443 F.3d 582, 591 (7th Cir. 2006) (affording little weight to the third factor where the defendant waited three months after the delay had occurred to raise his right to a speedy trial); Ward, 211 F.3d at 361 (finding that the third factor did not weigh strongly in the defendant's favor where the defendant was represented by counsel but waited until after much of the delay had occurred to assert his speedy trial right). Kashamu could have raised this issue fifteen years ago when he found out about the indictment, eleven years ago when he returned to Nigeria after he was released from the extradition proceedings in London, five years ago when he filed his first motion to dismiss the indictment, or at any time in between. He did not. Therefore, the Court

finds that Kashamu did not timely or "in due course" assert his right to a speedy trial. Doggett, 505 U.S. at 651.

### 4. Prejudice

Finally, the Court looks to whether Kashamu has been prejudiced by the delay in bringing him to trial. With respect to this factor, Kashamu argues that he need not show actual prejudice because prejudice to him is presumed due to the lengthy period of delay. "But establishing presumptive prejudice does not relieve a defendant from the burden of showing actual prejudice; rather . . . it is merely a threshold showing that the defendant must make before the remaining *Barker* factors become relevant." Danks v. Davis, 355 F.3d 1005, 1008-1009 (7th Cir. 2004) (citing Doggett, 505 U.S. at 656). "In fact, as long as the government shows reasonable diligence in prosecuting its case, a defendant who cannot demonstrate prejudice with specificity will not show a Sixth Amendment violation, no matter how long the delay." Hills, 618 F.3d at 632 (citing United States v. Howard, 218 F.3d 556, 564 (6th Cir. 2000)).

Actual prejudice is examined "'in light of the interests the Sixth Amendment seeks to protect.'" Harmon, 721 F.3d at 883 (quoting United States v. Hassebrock, 663 F.3d 906, 915 (7th Cir. 2011)). "The interests are (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. (internal quotation marks and citations omitted). Kashamu argues that he has been actually prejudiced in three ways: (1) by the fading and corruption of witnesses' memories; (2) by the loss of a key witness, his brother, Adewale; and (3) by the interference with his reputation, freedom of movement, and peace of mind.

#### a. *Fading and Corruption of Witnesses' Memories*

Kashamu argues that the fifteen year delay prejudices him because, in the case of a drug conspiracy such as this, detailed witness accounts of what conspiracy members did on specific

11

occasions constitutes a large part of the evidence in the case, and those memories degrade with time. However, as the Government notes, the testimony and accounts of the various witnesses and participants of the conspiracy have been preserved through grand jury testimony, numerous plea agreements, and testimony given at the trial of co-defendant Peter Stebbins. Thus, the danger of faded memories as to the details of the conspiracy is largely removed.

Next, Kashamu argues that the witnesses' abilities to identify the man who they knew as "Alaji" or "Kasmal" will be hindered by the fact that both he and Adewale have aged twenty years since the conspiracy took place and are of a different race than the potential witnesses. The Court rejects this argument. Naturally, everyone involved in this conspiracy, and indeed this case, has aged in the last fifteen years. Furthermore, this is not a situation where witnesses only saw "Alaji" or "Kasmal" for a brief moment twenty years ago; rather, several witnesses testified that they visited with him in Africa, and one was even intimately involved with him at the time. Should he proceed to trial, Kashamu will be able to challenge the accuracy of these identifications, if any, during his cross-examination of the witnesses. At present, however, there is no actual prejudice resulting simply from the passage of time.

Kashamu further argues that any memories that the witnesses do have of the events have likely been distorted over time by the popular fictionalized account of co-defendant Piper Kerman's incarceration in the Federal Bureau of Prisons in her book and Netflix television series "Orange is the New Black." The Court disagrees. The fictional account to which Kashamu refers involves a specific woman's time spent in prison, not the details of the crime and conspiracy which led her there. In fact, if anything, this account demonstrates that the events at issue here remain fresh in the minds of those impacted and involved, and that memories of such an experience are not soon forgotten.

### b. *Loss of a Key Witness*

Kashamu also argues that he has suffered actual prejudice through delay because he has lost contact with, and has otherwise been unable to locate his brother, Adewale, since he was released from the extradition proceedings in England. Kashamu contends that, without Adewale, his defense will suffer from witnesses' inability to identify Adewale as the man they knew as "Alaji" or "Kasmal." Adewale's presence, however, was unnecessary when Kashamu successfully evaded extradition in England by pointing to Adewale as the drug trafficker. Additionally, there is no evidence or indication that Kashamu knew the status or location of his brother in 1998 when he was first charged in the indictment. Thus, there is no basis for Kashamu to argue that the delay over the past fifteen years has caused him to lose access to his brother when Adewale may very well have been unavailable to him before that time. Accordingly, the Court rejects this argument.

### c. *Interference With Reputation, Movement, and Peace of Mind*

Finally, Kashamu argues that "[i]n the last 11 years since Mr. Kashamu was released from Brixton Prison until today, the ever-present cloud of the indictment has marred Mr. Kashamu's reputation, impaired his business and political interests, virtually barred him from international travel, and forced him and his family to live in perpetual uncertainty." Kashamu's Mem. of L. in Supp. of Mot. to Dismiss the Indictment 19. While it is true that a defendant can be prejudiced as a result of being named in a federal indictment "by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility," Barker, 407 U.S. at 533, there is no such evidence here. The evidence, as described by Kashamu, shows no prejudice:

> [After his release from English authorities,] Mr. Kashamu then returned to Nigeria to rebuild his business career. Over time he acquired cement and petroleum importation companies, developed commercial real estate, and became the owner of a hospitality business including a large hotel on Victoria Island in Lagos, Nigeria, franchised by Best Western. He openly incorporated more than six businesses in his name in Nigeria, including Kasmal International Limited, Nacoil International Limited, Hotel de Island Limited, Island Auto International Limited, Asuza International Petroleum Limited, and Kasmal Properties Limited. He also became an

13

> active participant in Nigerian politics and has been a leader in reforming Nigeria's ruling party, the People's Democratic Party (PDP). Specifically, Mr. Kashamu is a key facilitator of Nigeria's current President Goodluck Jonathan's initiative to reform the Nigerian government to increase the balance of power in the Nigerian system and shift the system away from military control. Mr. Kashamu also founded a non-profit foundation aimed at poverty reduction by providing women, young adults, and the impoverished with modes of transportation and equipment for small businesses, and has organized events through this foundation which have been tracked heavily in the media. Since his return to Nigeria 11 years ago, Mr. Kashamu has lived an open and public life.

Kashamu's Mem. of L. in Supp. of Mot. to Dismiss the Indictment 4-5 (internal citations omitted). These are not the accomplishments of a man prejudiced by a fifteen year old indictment. Kashamu fails to show any actual prejudice resulting from the delay in bringing him to trial.

On balance, although the length of the fifteen year delay weighs in Kashamu's favor, the remaining three factors weigh in favor of the Government. Accordingly, based on the foregoing analysis, the Court concludes that Kashamu's Sixth Amendment right to a speedy trial has not been violated. Thus, Kashamu's Rule 12(b)(3) challenge to the indictment on that basis is denied.

Kashamu also argues that this indictment should be dismissed pursuant to Rule 48 due to the delay in bringing him to trial. Because the Court finds that there was no speedy trial violation and that the delay was not "purposeful or oppressive," Kashamu's motion to dismiss the indictment pursuant to Rule 48(b) is likewise denied. Ward, 211 F.3d at 361-362 ("Rule 48 is not circumscribed by the Sixth Amendment" but "it is driven by the same general considerations as the Sixth Amendment." (internal quotation marks and citations omitted)).

### D. Personal Jurisdiction

Lastly, Kashamu argues that his indictment is defective because the Government lacks personal jurisdiction over him and thus it should be dismissed pursuant to Rule 12(b) for violation of his due process rights under the Fifth Amendment. Pursuant to 18 U.S.C. § 3231, "[t]he district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231; see also Hijazi, 589 F.3d at 408. Furthermore, "'[a] district court

has personal jurisdiction over any defendant brought before it on a federal indictment charging a violation of federal law.'" United States v. Anzaldi, No. 11 CR 820, 2013 WL 393326, at *3 (N.D. Ill. Jan. 31, 2013) (quoting United States v. Phillips, 326 F. App'x 400, 400 (7th Cir. 2009)).

In addressing "due process requirements in the context of criminal jurisdiction over a foreign defendant," however, the Seventh Circuit has indicated that courts should look to principles of international law in order to determine whether a defendant's "contacts with the United States [are] sufficient to support his prosecution." United States v. Hijazi, 845 F. Supp. 2d 874, 883 (C.D. Ill. 2011) (citing Hijazi, 589 F.3d at 411-412). Section 402 of the Restatement Third of Foreign Relations Law of the United States provides that:

> Subject to § 403, a state has jurisdiction to prescribe law with respect to (1)(a) conduct that, wholly or in substantial part, takes place within its territory; (b) the status of persons, or interests in things, present within its territory; (c) conduct outside its territory that has or is intended to have substantial effect within its territory . . . and (3) certain conduct outside its territory by persons not its nationals that is directed against the security of the state or against a limited class of other state interests.

Restatement (Third) of Foreign Relations § 402 (ALI 1987). However, "[e]ven when one of the bases for jurisdiction under § 402 is present, a state may not exercise jurisdiction to prescribe law with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable." Id. § 403(1). To determine whether exercise of personal jurisdiction would be reasonable, courts must evaluate all relevant factors including:

> (a) the link of the activity to the territory of the regulating state, i.e., the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory;
> (b) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect;
> (c) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted;
> (d) the existence of justified expectations that might be protected or hurt by the regulation;

(e) the importance of the regulation to the international political, legal, or economic system;

(f) the extent to which the regulation is consistent with the traditions of the international system;

(g) the extent to which another state may have an interest in regulating the activity; and

(h) the likelihood of conflict with regulation by another state.

Id. § 403(2).

Such a detailed analysis, however, is unnecessary here, where Kashamu concedes that this Court has jurisdiction over the man known as "Alaji" or "Kasmal." See Kashamu's Mem. of L. in Supp. of Mot. to Dismiss the Indictment 23 ("[T]here is simply no nexus between Mr. Kashamu—a foreign national with no ties to the United States unless he were determined to be 'Alaji.'" (emphasis added)). Kashamu's challenge to personal jurisdiction, rather, arises from his argument of mistaken identity—that he is not "Alaji" or "Kasmal." Kashamu argues that in order to establish personal jurisdiction over him, the Government must now prove that he is the man known as "Alaji" or "Kasmal" as charged in the indictment. Not so. Kashamu's identity is a factual question to be determined at trial.

For the purposes of the instant motion, the Court accepts all of the allegations in the indictment as true. Moore, 563 F.3d at 586 (citations omitted). It is well established that a motion to dismiss an indictment "is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence.'" Id. (internal quotation marks and citation omitted). The indictment alleges, *inter alia*, the following:

> 2. It was part of the conspiracy that defendants FILLMORE, BENZER, CHRISTMAN, STEINBEIGLE, CATHERINE CLEARY WOLTERS ("CLEARY WOLTERS"), BLOW, PUDVAH, ELLEN FUHRMAN WOLTERS ("HESTER WOLTERS"), STEBBINS, MOLOMO, MORFORD, DONALDSON, KERMAN and KASHAMU, and others known and unknown to the Grand Jury, arranged to import and did import heroin into the United States on multiple occasions through an organization headed by defendant KASHAMU who, at all relevant times, resided in the country of Benin in Africa. Defendant KASHAMU maintained contact with the other conspirators by telephone, face-to-face meetings and through individuals whose identities were unknown to the conspirators.

. . . .

10. It was further part of the conspiracy that in or about October 1993, conspirators transported cash from the United States to locations in Europe at defendant KASHAMU's direction and on his behalf. Defendant CLEARY WOLTERS collected the cash from these conspirators and, in turn, gave the cash to an individual unknown to the Grand Jury for delivery to defendant KASHAMU.

. . . .

13. It was further part of the conspiracy that, at various times between in or about January 1993 through in or about June 1995, defendants FILLMORE, CLEARY WOLTERS, BLOW, STEBBINS, and HESTER WOLTERS traveled alone, in a pair, or in a group to Benin to meet with defendant KASHAMU to discuss the smuggling organization or to collect money.

Second Superseding Indictment ¶¶ 2, 10, 13; see also Gov't Resp. to Def. Kashamu's Mot. to Quash Warrant & to Dismiss Indictment Ex. 1 (Doc. No. 550-2). The Court finds that these allegations are sufficient to exercise personal jurisdiction over Kashamu, as the man known as "Alaji" or "Kasmal." Therefore, Kashamu's motion to dismiss the indictment for an alleged violation of his Fifth Amendment right to due process is denied.

### III. CONCLUSION

For the foregoing reasons, Kashamu's motion to dismiss his indictment is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: April 23, 2014